BARRY J. PORTMAN
Federal Public Defender
GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant JAMES LINTZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAMES LINTZ, <br><br> Defendant. | No. CR 08 - 298 SI <br><br> **JAMES LINTZ'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** <br><br> Date: August 22, 2008 <br> Time: 10:00 a.m. <br> Court: Judge Illston |

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND JOSEPH P. RUSSONIELLO, UNITED STATES ATTORNEY; AND BRIAN J. STRETCH, CHIEF, CRIMINAL DIVISION; AND ERIKA R. FRICK, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on August 22, 2008 at 10:00, or as soon thereafter as the matter may be heard before the Honorable Susan Illston, defendant James Lintz, by and through counsel, will move this Court to suppress any and all evidence following the unlawful seizure of Mr. Lintz by San Francisco police officers on March 24, 2008. Mr. Lintz respectfully requests an evidentiary hearing if the Court is unable to ascertain the illegality of the officers' conduct based upon the parties' submissions.

This motion is based on the following memorandum of points and authorities and accompanying exhibits, the Constitution of the United States, all other applicable constitutional, statutory and case authority, and such evidence and argument as may be presented at the hearing.

## STATEMENT OF FACTS[1]

Defendant James Lintz is charged in a one-count indictment with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. The charge stems from events which occurred on March 24, 2008, at approximately 3:52 p.m. At that time, according to the police report, four San Francisco police officers were on patrol in an unmarked police car in the Hunter's Point District of San Francisco. While traveling southbound on Hudson Avenue, the officers observed a vehicle heading northbound on Hudson in the vicinity of Ardath Court which contained four black adult males.

The vehicle was driven by Charles Toney, who was accompanied by Mr. Lintz and two other passengers. Lintz Decl. at 1. Claiming that they had seen some sort of vehicle violation, the police decided to make a U-turn to stop Mr. Toney's car. Before the police could make the U-turn and stop Mr. Toney's car, however, Mr. Toney pulled his car onto Reuel Court and stopped to let Mr. Lintz get out. *Id.* At that point, Mr. Lintz got out of the car and began to walk away from the car. *Id.* When he was about 10 feet from Mr. Toney's car, the police pulled up behind the Mr. Toney's car and activated their emergency lights. *Id.* at 2.

At least two of the officers in the unmarked car got out, and one of them yelled at Mr. Lintz to stop. Recognizing that the individuals were police officers, Mr. Lintz complied and stopped walking. *Id.* The police then ordered Mr. Lintz to reenter the vehicle. *Id.* Mr. Lintz immediately complied with the command and was detained inside the vehicle. *Id.* He did not feel he was free to leave at that point. *Id.*

The police claim that Mr. Lintz then made furtive gestures, and they ordered him out of the car. They then searched him and found the gun at issue in this case.

---

[1] The facts are taken from the attached police reports provided to Counsel during discovery, except for those facts supported by the attached declaration of James Lintz, which are referenced as such (Lintz Decl.). The defendant does not attest to the accuracy of the facts contained in the police reports, and awaits appropriate declarations from the police officers at issue in this matter.

MOTION TO SUPPRESS - 2 -

# ARGUMENT

## I. THE GOVERNMENT BEARS THE BURDEN OF PROVING BY A PREPONDERANCE THAT A SEIZURE IS EFFECTED PURSUANT TO A VALID EXCEPTION TO THE FOURTH AMENDMENT WARRANT REQUIREMENT.

The detention and search of Mr. Lintz was undertaken without a warrant. The government bears the burden of establishing the factual basis for a valid exception to the warrant requirement by a preponderance of the evidence. *United States v. Linn,* 880 F.2d 209, 214 (9th Cir. 1989).

## II. THE VEHICLE STOP WAS INVALID.

The government specifically bears the burden of showing that the officers' initial decision to seize Mr. Toney's vehicle by pulling up behind it in a police vehicle and activating emergency lights, was supported by an objectively reasonable suspicion that Mr. Toney had committed a traffic violation. The defendant is aware of no facts which would allow the government to meet this burden. As a consequence, the initial stop of Mr. Toney's car and the seizure of Mr. Lintz was illegal.

## III. THE SEIZURE OF MR. LINTZ WAS INVALID.

Assuming for the sake of argument that the stop of Mr. Toney's car was valid, Mr. Lintz's compliance with the order to reenter the vehicle constituted a seizure subject to Fourth Amendment scrutiny. The seizure was not executed pursuant to a valid exception to the Fourth Amendment warrant requirement. It was not supported by reasonable articulable suspicion, nor was it authorized by the Ninth Circuit's decision in *United States v. Williams*, 419 F.3d 1029 (9th Cir. 2005) (reasonable for police to order a passenger who is lawfully detained pursuant to a *Terry*-stop and voluntarily exits the vehicle to reenter the vehicle). Accordingly, the Court should find that the seizure of Mr. Lintz was unlawful and should suppress all fruits of the seizure.

### A. Mr. Lintz Was Seized for Purposes of the Fourth Amendment.

Under the Fourth Amendment, the people are "to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away," *Terry v. Ohio*, 392

U.S. 1, 16 (1968), such that "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 546 (1980) (plurality). An individual's "s*ubmission* to the assertion of authority" is sufficient to indicate that a seizure has occurred. *California v. Hodari,* 499 U.S. 621, 626 (1991) (emphasis in original). The Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Montero-Camargo,* 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

Mr. Lintz's compliance with an order from the police to stop walking away from Mr. Toney's car and to reenter the vehicle constituted a seizure of his person. Before the seizure, the four officers had activated their emergency lights and thus identified themselves as police officers to Mr. Lintz. No reasonable person in Mr. Lintz's situation would have felt free to leave given such a show of authority, and Mr. Lintz subjectively did not feel he was free to leave. Indeed, when one officer issued the clear directive to reenter the car, Mr. Lintz complied immediately in an unequivocal submission to authority. Mr. Lintz was thus seized for purposes of the Fourth Amendment.

### B. The Seizure of Mr. Lintz Was Not Effected Pursuant to a Valid Exception to the Fourth Amendment Warrant Requirement.

The Fourth Amendment establishes a strong preference for seizures executed pursuant to a warrant. *Terry,* 392 U.S. at 20. Warrantless seizures are *per se* unreasonable, subject only to a few limited exceptions. *Id.*; *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001). First, an officer may briefly detain a suspect without a warrant "if the officer . . . has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Montero-Camargo,* 208 F.3d at 1129 (citations and internal quotation marks omitted). Second, a police officer may reasonably effect a suspicionless seizure of a person in a car which has been validly stopped in order to insure, *inter alia,* officer safety. *See Williams,* 419 F.3d at 1034.

Mr. Lintz's seizure was neither supported by reasonable articulable suspicion nor authorized by *Williams*; thus, the government cannot meet its burden, and all fruits of the unlawful seizure

must be suppressed.

### 1. The Seizure Was Not Supported by Reasonable Articulable Suspicion.

Pursuant to *Terry,* 392 U.S. 1 (1968), an officer may briefly detain a suspect with reasonable, articulable suspicion that "criminal activity is afoot." *Montero-Camargo,* 208 F.3d at 1129 (citations and internal quotation marks omitted). The Ninth Circuit has articulated the standard under *Terry* and its progeny as follows:

> the officer in question must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. Rather, reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion.

*Id.* (citations and internal quotation marks omitted).

The requirement of reasonable suspicion incorporates two elements: "First, the assessment must be based upon the totality of the circumstances. Second, that assessment must arouse a reasonable suspicion that the *particular person* being stopped has committed or is about to commit a crime." *Id.* (citations and footnote omitted) (emphasis added).

The record is devoid of facts that would suggest to a reasonable officer that Mr. Lintz had committed or was about to commit a crime at the time he was seized. When he was ordered into Mr. Toney's car, Mr. Lintz was ten feet away from the vehicle and walking away from it. He displayed no signs of criminal behavior. Mr. Lintz's seizure was thus not supported by reasonable articulable suspicion.

### 2. Seizure Was Not Authorized By *Williams*.

Absent particularized suspicion, warrantless seizures are "ordinarily unreasonable" and permitted only under "limited circumstances." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). Under *Williams,* however, a car passenger who has been lawfully detained during a traffic stop may be required to face the additional minor inconvenience of waiting inside the vehicle if compelled by officer safety. *Williams,* 419 F.3d at 1034.

*Williams* does not control this case. When he was seized, Mr. Lintz was not a passenger in a lawfully stopped vehicle, but a pedestrian who was walking down the street on foot. The

command that he enter Mr. Toney's car thus constituted an initial seizure, rather than an additional inconvenience applied to a lawfully detained passenger in a car. Thus, the warrantless seizure of Mr. Lintz was not authorized by the Ninth Circuit's decision in *Williams*.

## CONCLUSION

The government cannot meet its burden of demonstrating that Mr. Lintz's seizure was lawful. For the reasons articulated above, the Court should grant the motion to suppress all fruits of the warrantless seizure.

Dated: June 27, 2008

          Respectfully submitted,

          BARRY J. PORTMAN
          Federal Public Defender

            /s/

          GEOFFREY A. HANSEN
          Chief Assistant Federal Public Defender

San Francisco Police Report, 080310136

# Exhibit A

# San Francisco Police Department
## INCIDENT REPORT

**080310136**

Report Type: **Initial**

| Incident Number | Occurrence from Date/Time | Occurrence to Date/Time | Reported Date/Time | CAD Number |
|---|---|---|---|---|
| 080-310-136 | 3/24/08 15:51 | 3/24/08 15:55 | | 080842378 |

**Type of Incident:** Firearm, Loaded, in Vehicle, Possession or Use -12168, Firearm with Altered Identification -27122, Firearm, Possession By Prohibited Person -12080

| Location of Occurrence | At Intersection with/Premise type |
|---|---|
| Hudson Av | Reuel Ct   Street, (Not Sidewalk) |

| Confidential Report? | Arrest Made? ✓ | Suspect Known? | Suspect Unknown? | Non-Suspect Incident? | Domestic Violence? | (Type of Weapon Used) | Reporting Unit 3C38R |

**Location Sent:** On View

| How Cleared? | Reported to Bureau | Name | Star | Date/ | Time | Elder Victim | Gang Related? ✗ | Juvenile Subject? | Prejudice Based? ✓ |
|---|---|---|---|---|---|---|---|---|---|
| 6 | Gang Task Force | Off. Jackson | 876 | 3/24/08 | 16:50 | | | | |

### OFFICER DECLARATION

I declare under penalty of perjury, this report of **7** pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved.

PROP 115 CERTIFIED   5 YEAR/POST   Signature: _[signature]_

| Reporting Officer | Star | Station | Watch | Date |
|---|---|---|---|---|
| Kirchner, Jason F | 423 | Bayview Station | 1200-2200 | 3/24/08 20:34:06 |
| Reviewing Officer SGT Ewins | 733 | Bayview Station | 1200-0100 | 3-24-08 |
| OIC LT. DOMINIC M. CELAYA #113 | | Bayview Station | 15/01 | 3-24-08 |

| Related Case | Related Case | Re-Assigned to | Assigned to 5G200 | Assigned by J.K. #423 |
|---|---|---|---|---|
| | | Copies to 5G200  5E200  5G200 | Add'l Copies DA/2, OR, ATF Triggerlock II | GTF |

### REPORTEE

| Code R | Name (Last, First Middle) SFPD #423, #4184, #441, #1994 | | Alias |
|---|---|---|---|
| Day Phone | Type | Home Address | City | State | Zip Code |
| Night Phone (415) 671-2300 | Type Work | Work Address 201 Williams Avenue | City San Francisco | State CA | Zip Code 94124- |
| DOB / Age  DOB Unk. | or age between: and | Race | Sex | Height | Weight | Hair Color | Eye Color | ID Type  Jurisd.  ID No. |

| Confidential Person | Violent Crime Notification | 293 PC Notification | Star | Follow-up Form YES | Statement YES | Relationship to Subject |

School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language

### BOOKED 1

| Code B 1 | Name (Last, First Middle) Lintz, James | | ALIAS "Zuke" |
|---|---|---|---|

| Day Phone | Type | Home Address 42 Westbrook Court | City San Francisco | State CA | Zip Code 94124- |
| Night Phone | Type | Work Address | City | State | Zip Code |

| DOB Unknown | Date of Birth 9/25/81 | Age 26 | or age between and | Race B | Sex M | Height 5'08 | Weight 210 | Hair Color BLK | Eye Color BRO |

| SFNO 565912 | J/D# (if Juvi.) | ID Type/Jurisdiction/Number CII 22389281 | ID Type/Jurisdiction/Number FBI 763618PB8 | ID Type/Jurisdiction/Number |

| Book Section #1 N/W 12090 PC | Book Section #2 N/W 12094(a)PC | Book Section #3 N/W 12021a1PC | Book Section #4 N/W 12031 2aPC | Book Section #5 N/W 12023(a)PC | Booking Location Bayview Station |

| Warrant # | Court # | Action # | Dept | Enroute to | CWB Check Dave | Star 1713 |

| Warrant Violation(s) | | | | Bail | Mirandized ✓ | Star 441 | Date 3/24/08 | Time 17:50 | Statement ✓ |

| Citation # | Violation(s) | | Appear Date/Time | Location of Appearance |

| Book/Cite Approval Sgt. Ewins | Star 733 | Mass Arrest Code | M X-Rays | School (if Juvenile) | ☐ CA Form Booked Copy Attached |

**Other Information:** Citation/Warrant/Booking Charge(s)/Missing Person-Subject Description; Scars, Marks, Tatoos
Add'l Charges: N/W 12025 (b)(1) PC (2 counts), N/W 12020 (a) PC

an Francisco Police Departm*

## ADDITIONAL SUSPECTS

080310136

### DETAINED 2

| Field | Value |
|---|---|
| CODE | D 2 |
| Name (Last, First Middle) | Toney, Charles Earl |
| Alias | |
| Day Phone | |
| Type | |
| Home Address | |
| City | |
| State | |
| Zip Code | |
| Night Phone | |
| Type | |
| Work Address | |
| City | |
| State | |
| Zip Code | |
| School (if Juvenile) | |
| Race | B |
| Sex | M |
| DOB Unknown | |
| DOB | 10/26/85 |
| Height | |
| Weight | |
| Hair Color | BLK |
| Eye Color | BRO |
| SFNO | |
| J/D# (if Juv.) | |
| ID No. | DL D2236640 CA |
| ID No. | |
| ID No. | |
| Mirandized | ✓ |
| Star | 4184 |
| Date/Time | 3/24/08 16:17 |
| Statement | ✓ |

Other Information: Citation/Warrant/Booking Charge(s)/Missing Persons-Subject Description/Scars, Marks, Tatoos
Driver of (F) vehicle. Released per 849 (b) PC

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE. PHOTOCOPY ATTACHED WITH THIS REPORT.

### DETAINED 3

| Field | Value |
|---|---|
| CODE | D 3 |
| Name (Last, First Middle) | Williams, Nyjil Toney |
| Alias | |
| Day Phone | |
| Type | |
| Home Address | 65 Ardath Court |
| City | San Francisco |
| State | CA |
| Zip Code | 94124- |
| Night Phone | |
| Type | |
| Work Address | |
| City | |
| State | |
| Zip Code | |
| School (if Juvenile) | |
| Race | B |
| Sex | M |
| DOB Unknown | |
| DOB | 8/9/84 |
| Height | 507 |
| Weight | 193 |
| Hair Color | BLK |
| Eye Color | BRO |
| SFNO | 604384 |
| J/D# (if Juv.) | |
| ID No. | |
| Mirandized | ✓ |
| Star | 441 |
| Date/Time | 3/24/08 16:45 |
| Statement | ✓ |

Other Information: Citation/Warrant/Booking Charge(s)/Missing Persons-Subject Description/Scars, Marks, Tatoos
Released per 849 (b) PC

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE. PHOTOCOPY ATTACHED WITH THIS REPORT.

SFPD377 C (11/02)

**080310136**

an Francisco Police Department
## ADDITIONAL SUSPECTS

### DETAINED 4

| Field | Value |
|---|---|
| CODE | D 4 |
| Name (Last, First Middle) | Wilkins, Landon |
| Alias | |
| Home Address | 39 Westbrook Ct |
| City | San Francisco |
| State | CA |
| Zip Code | 94124- |
| Race | B |
| Sex | M |
| DOB | 4/23/86 |
| Height | 511 |
| Weight | 245 |
| Hair Color | BLK |
| Eye Color | BRO |
| SFNO | 618525 |
| ID No. | CII 27962708 |
| ID No. | FBI 092273PC7 |
| ID No. | DL D2540309 CA |
| Mirandized | ✓ |
| Star | 441 |
| Date/Time | 3/24/08 16:35 |
| Statement | ✓ |

Other Information: Citation/Warrant/Booking Charge(s)/Missing Persons-Subject Description/Scars, Marks, Tatoos
Released per 849 (b) PC

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE. PHOTOCOPY ATTACHED WITH THIS REPORT.

---

### [Second suspect — blank]

| Field | Value |
|---|---|
| CODE | |
| Name (Last, First Middle) | |
| Mirandized | ✓ |
| Date/Time | 3/24/08 |
| Statement | ✓ |

☐ ORIGINAL PRIVATE PERSON'S ARREST FORM BOOKED AS EVIDENCE. PHOTOCOPY ATTACHED WITH THIS REPORT.

SFPD377 C (11/02)

**080310136**

## San Francisco Police Department
### PROPERTY LISTINGS

| | Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|---|
| E 1 | EVD 1 | Shotgun, sawed-off | | | | Mossberg | 500A |
| | Serial No. Destroyed | Gun Make MOSSBERG | Caliber 12 gauge | Color BLU | Narcotics Lab No. | Quantity 1 | Value |
| | Seized by (Star) 441 | From Where Waistband of (B) Lintz | | | | | |
| | Additional Description/Identifying Numbers | | | | | | |

| | Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|---|
| E 2 | EVD 2 | Live shotgun shells | | | | Winchester | |
| | Serial No. | Gun Make | Caliber 12 gauge | Color RED | Narcotics Lab No. | Quantity 2 | Value |
| | Seized by (Star) 423 | From Where Inside of (E1) Shotgun | | | | | |
| | Additional Description/Identifying Numbers<br>Shell #1: Win Super X, 2 3/4" shell, 00 buckshot<br>Shell #2: Win Western 3" Magnum, #2 shot | | | | | | |

| | Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|---|
| E 3 | EVD 3 | Statements | | | | | |
| | Serial No. | Gun Make | Caliber | Color WHI | Narcotics Lab No. | Quantity 4 | Value |
| | Seized by (Star) | From Where | | | | | |
| | Additional Description/Identifying Numbers | | | | | | |

| | Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|---|
| E 4 | EVD 4 | Videotape | | | | Maxell | 6 hour |
| | Serial No. | Gun Make | Caliber | Color BLK | Narcotics Lab No. | Quantity 1 | Value |
| | Seized by (Star) | From Where | | | | | |
| | Additional Description/Identifying Numbers | | | | | | |

| | Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|---|
| E 5 | EVD 5 | Certificates of Release | | | | SFPD | 184 |
| | Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity 3 | Value |
| | Seized by (Star) | From Where | | | | | |
| | Additional Description/Identifying Numbers | | | | | | |

| Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|
| | | | | | | |
| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
| Seized by (Star) | From Where | | | | | |
| Additional Description/Identifying Numbers | | | | | | |

| Code/No | Item Description | | | | Brand | Model |
|---|---|---|---|---|---|---|
| | | | | | | |
| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
| Seized by (Star) | From Where | | | | | |
| Additional Description/Identifying Numbers | | | | | | |

JL0005

# San Francisco Police Department
## VEHICLE INFORMATION

**080310136**

VEHICLE CODES: B -BOOSTED; D -DAMAGED; F -USED FELONY; T -TOWED; U -USED OTHER; V -VANDALIZED; X -STRIPPED

### Vehicle 1

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|---|---|---|---|---|---|
| F | 2HSR293 | CA | 2009 | PC | 1JCMR7844JT138551 |

| Veh Year | Make | Model |
|---|---|---|
| 1988 | Jeep (1970-1988) | Jeep |

| Style | Color | Plates/VIN Match? | Plates Missing? |
|---|---|---|---|
| Sport Utility Vehicle | Maroon | ☐ | FRONT ☐  REAR ☐ |

**Condition (Check all that apply):** APPARENTLY DRIVABLE ☑  BURNED? ☐  DAMAGED? ☐  STRIPPED? ☐

Damage: 
Point of Entry:

| Crime Scene Tech. Notified? | 387 Form Given to Owner? | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|
| ☐ | ☐ | | | | | |

Hold For:
Other Information:

**Registered Owner**
- Last Name: Toney
- First Name: Charles
- Residence Address: 66 Ardath Ct
- City: San Francisco
- State: CA
- Zip: 94124-
- Residence Phone:
- Business Phone:

### Vehicle 2

(blank)

### Vehicle 3

(blank)

**080310136**

San Francisco Police Department
NARRATIVE

On 03/24/08 at 1552 hours, I was in plainclothes in an unmarked police vehicle with Officers Scott #441, Coleman #4184 and Ellis #1994. We were searching the area of Hudson and Ardath due to an anonymous report of a black male in a vehicle waiting to kill a victim of a prior shooting. As we drove S/B on Hudson near Ardath Ct we were passed by an (F) Jeep with a driver side tail light out. Officer Coleman spotted the violation and followed the vehicle N/B Hudson towards Reuel Ct.

Officer Coleman stopped the vehicle as it turned right onto Reuel Court. As the vehicle stopped the occupant of the rear passenger side seat, later identified as (B1) Lintz, exited the vehicle. I quickly exited our vehicle and told Lintz he was not free to leave the vehicle. Lintz paused, then walked back to the vehicle quickly. Lintz was carrying a heavy camouflage coat in his left hand and wearing bulky, loose clothing capable of concealing a firearm. I was immediately suspicious of Lintz's hasty exit and quick return to the vehicle and my first thought was that he had something on him that he did not want us to find.

Upon re-entering the vehicle, Lintz looked nervous as I spoke to him through the still open rear door. Lintz reached for his left waistband area that was covered by his jacket. Fearing for my safety I told him to keep his hands where I could see them. Officer Scott joined me near the open rear door. Lintz again reached for his left waistband area and I loudly ordered "Keep your hands where we can see them!" Lintz briefly complied and then returned his hands to his left waistband area. Worried that Lintz was trying to draw a gun, I drew mine and noticed Officer Scott had done the same. As I yelled "Hands up! Now!" I heard Officer Scott yelling something similar. Lintz refused to comply and continued to fumble with an object in his left waistband. I yelled "Out of the car with your hands up!!" At that point Lintz began to slowly exit the vehicle and I grabbed his hands to prevent him from again reaching for his waistband. Officer Scott then reached past me as I noticed the receiver of an (E1) sawed-off shotgun that was partially down Lintz's pant leg. Officer Scott removed the shotgun from Lintz's left waistband as I watched, holding Lintz's hands. I then handcuffed Lintz and searched him.

Officer Ellis noted that the suspect from a recent shooting in the area on Beatrice was a black male with dreadlocks matching Lintz's description. I made an unsuccessful attempt to notify Sgt./Insp. Chaplin #951, who is investigating that shooting.

The driver of the vehicle (D2) Toney, front passenger, (D3) Williams, and rear driver side passenger, (D4) Wilkins, were all removed from the vehicle and detained for officer safety. A search of the vehicle for additional contraband was then conducted with negative results. I safely unloaded the shotgun and found two live (E2) 12 gauge shells in the magazine. All subjects, evidence, and the vehicle were transported to Bayview Station for further investigation. At the station I measured the sawed off barrel of the shotgun and noted it was 14 3/4 inches long, well below the legal limit of 18 inches. Due to removal of the gun's stock and shortening of the barrel, the overall length of the gun was only 23 inches, not 26 inches as required by law. The serial number of the gun had been scratched off, making it impossible to read. I requested the SFPD Crime Lab Firearms Unit attempt to chemically raise the serial number in order to locate the legal owner of the shotgun and determine if it was stolen.

Toney, Williams and Wilkins were all Mirandized and wrote (E3) statements regarding the incident. In their statements all three subjects discuss getting into the Jeep on Ardath and being stopped shortly thereafter by us. Lintz (alias "Zuke") is described by Williams entering the car on Ardath after asking for a ride down the hill. At the station, Officers Scott and Ellis Mirandized and interviewed Lintz. During the interview, Lintz admits to possessing the firearm in the vehicle, concealing it on his person, knowing that it was loaded, and knowing that the gun had been cut down. He said he found it near Ardath Ct and brought it in the car with him when he got a ride from his friend. The interview was recorded on an (E4) videotape. The tape, (E5) certificates of release, and written statements were booked as evidence by Officer Ellis at Bayview Station. The shotgun and ammunition were booked as evidence by Officer Scott.

It should be noted that Lintz has two felony convictions making it illegal for him to possess firearms (Case #001-425-035, Court #01957963). He also has a p... history of violent crime and firearm possession. Lintz was booked at Bayview Station on the listed charges with approval from Sgt. Ewins #733. Dave #1713 of CWB conducted a warrants check with negative results. Toney, Williams and Wilkins were released per 849 (b) PC from Bayview Station. Toney's vehicle was returned to him upon his release. A copy of this report was faxed to ATF/Triggerlock II.

Declaration Of James Lintz
# Exhibit B

```
 1  BARRY J. PORTMAN
    Federal Public Defender
 2  GEOFFREY A. HANSEN
    Assistant Federal Public Defender
 3  19th Floor Federal Building – Box 36106
    450 Golden Gate Avenue
 4  San Francisco, CA 94102
    Telephone: (415) 436-7700
 5
    Counsel for Defendant LINTZ
 6

 7

 8              IN THE UNITED STATES DISTRICT COURT

 9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,      )   No. CR-08 - 298 SI
                                   )
12              Plaintiff,         )   DECLARATION OF JAMES LINTZ
                                   )
13  vs.                            )
                                   )
14  JAMES LINTZ,                   )
                                   )
15              Defendant.         )
                                   )
16
```

17        I, James Lintz, declare that the following:

18  1. On March 24, 2008 at approximately 4:00 p.m., I was in a car in the Hunter's Point District

19  of San Francisco driven by a friend Charles Toney, who drives a Jeep Cherokee. There were two

20  other people in the car.

21  2. Mr. Tooney pulled out of Ardath Court onto Hudson Avenue, and began to drive northbound.

22  We drove past Cashmere Street, and at that point I asked Mr. Toney to pull over and drop me off

23  on Reuel Court.

24  3. Mr. Toney drove right onto Reuel Court and stopped the car. At that point in time, we had not

25  been stopped by police, and there was no car directly behind us.

26  4. I got out of the car and began to walk away. When I was about 10 feet away from the car, a

LINTZ DELCARATION                    1

Ford Crown Victoria came around the corner and pulled up behind Mr. Toney's car. The Crown Victoria then put on grill emergency lights, indicating that it was a police car.

5. At least two officers got out of the car, and one of them told me to stop walking and to get back into the car. I immediately complied by walking the 10 feet back to the car and getting back into the rear of Mr. Toney's vehicle. I did not think I was free to keep walking at that point due to the police officer's order to return to the car.

6. Soon thereafter, I was ordered to get out of the car, and was searched by the police.

I declare under penalty of perjury that these statements are true and correct to my best information and belief.

Dated: June 25, 2008

*/s/ James Lintz*
James Lintz