JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ERIKA R. FRICK (CSBN 208150)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6973
    Facsimile: (415) 436-7234
    Email: erika.frick@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JAMES LINTZ, a/k/a "Zuke," )<br>)<br>    Defendant. )<br>_____ ) | No. CR 08-0298 SI<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**<br><br>Date: August 22, 2008<br>Time: 11:00 a.m. |

    The United States hereby files its response to defendant's motion to suppress physical evidence (*i.e.*, the loaded Mossberg 500A shotgun, with an altered and unreadable serial number, that was found on defendant's person on March 24, 2008). As set forth below, the defendant's motion to suppress should be denied in its entirety. Contrary to defendant's position, both the vehicle stop and the seizure and search of the defendant during that vehicle stop were valid under clearly established Fourth Amendment precedent.

    An evidentiary hearing has not been scheduled in this case, and the government therefore does not plan to call any witnesses at the argument on this motion that is scheduled for August

22, 2008. Because there are no material facts in dispute, an evidentiary hearing is not required.

**BACKGROUND**

On March 24, 2008, plainclothes officers were searching the streets around Hudson and Ardath in the Bayview area of San Francisco due to an anonymous report of a black male in a vehicle waiting to kill a victim of a prior shooting. *See* Exhibit A, Declaration of Jason F. Kirchner in Support of Government's Opposition to Defendant's Motion to Suppress, at ¶ 2. As the officers drove southbound on Hudson near Ardath Court, they were passed by a Jeep with a driver side brake light out. *Id.*[1] One of the officers (Officer Coleman) spotted the traffic violation and followed the Jeep northbound on Hudson towards Reuel Court. *Id.* ¶ 3. Officer Coleman, who was driving, activated the undercover car's red light but did not turn on the siren. The Jeep, in which a male driver and three male passengers were riding, stopped almost immediately as it turned right onto Reuel Court. Officer Coleman pulled the undercover car in behind the Jeep. *Id.*

As the undercover car stopped, Officer Kirchner exited from the front right passenger seat. *Id.* ¶ 4. As he approached the Jeep, the occupant of the rear passenger side seat, later identified as the defendant James Lintz, exited the vehicle and began to walk away. *Id.* Lintz was carrying a heavy camouflage coat in his left hand and wearing bulky, loose clothing capable of concealing a firearm. Officer Kirchner was suspicious of Lintz's hasty exit from the vehicle and suspected he had something illegal on his person. Lintz took several steps but got no more than 20 feet away from the car. Officer Kirchner was very concerned about officer safety with three men inside the Jeep and one man outside of it. *Id.*

Officer Kirchner called out to Lintz and told him to stop and to get back into the car. Lintz hesitated, looked at Officer Kirchner, then walked back to the vehicle quickly. Officer Kirchner allowed him to get back into the vehicle without searching him because the officer thought it was safer that way. Lintz entered through the open rear passenger side door, which

---

[1] Although in Officer Kirchner's original police report, he had indicated that it was a tail light that was out, that was a typographical error. In fact, it was a brake light that was not functioning. Exhibit A ¶ 2.

CR 08-0298 SI
GOVERNMENT OPPOSITION
TO MOTION TO SUPPRESS            2

remained open throughout the incident. *Id.* ¶ 5.

As soon as he sat down in the Jeep, Lintz appeared to be nervous and immediately reached for his left waistband area with one or both hands. Officer Kirchner believed Lintz was reaching for a gun. *Id.* ¶ 6.

Officer Kirchner ordered Lintz to "Keep your hands where we can see them!" Lintz complied only briefly, then reached for his left waistband area again. He did this three or four times. *Id.* ¶ 7. Each time that Lintz reached for his waist again, Officer Kirchner became more concerned for the officers' safety and yelled louder at Lintz to put his "Hands up! Now!" *Id.* at 8. During this time, Officer Kirchner noticed Officer Scott standing next to him and also yelling at Lintz to show the officers his hands. At some point, fearing for their safety, the officers drew their guns. *Id.* ¶ 8.

By the fourth time Lintz reached for his waist, Officer Kirchner realized it was too dangerous to leave him in the car and he had to be removed and searched. *Id.* ¶ 9. Officer Kirchner ordered Lintz "Out of the car with your hands up!" Once he was out of the car, Officer Kirchner saw the receiver of a shotgun in Lintz's waistband. Officer Scott removed the shotgun as Officer Kirchner controlled Lintz's hands. Once the shotgun was removed, Lintz was handcuffed. *Id.* ¶ 10-11.[2]

At that point, the officers removed and detained the driver of the vehicle, Charles Toney, and two other passengers in order to ensure officer safety. A search of the vehicle for additional contraband was then conducted with negative results. Officer Kirchner inspected the gun and found two live 12 gauge shells in the magazine of the shotgun. All suspects, evidence, and the vehicle were transported to Bayview Station for further investigation. *Id.* ¶ 13.

At the station, Officers Scott and Ellis Mirandized and interviewed Lintz. During the videotaped interview, Lintz admitted to possessing the firearm in the vehicle, concealing it on his person, knowing that it was loaded, and knowing that the gun had been cut down. He said he

---

[2] The shotgun was shorter than the legal length. The serial number of the gun had also been scratched off.

CR 08-0298 SI
GOVERNMENT OPPOSITION
TO MOTION TO SUPPRESS                3

found it near Ardath Court and brought it in the car with him when he got a ride from his friend. *Id.* ¶ 14.

# DISCUSSION

## I. The Vehicle Stop Was Valid.

The vehicle stop was valid under the Fourth Amendment. As explained above and in Officer Kirchner's attached declaration, the Jeep in which the defendant was riding as a passenger had a broken brake light on the driver's side. The officers therefore had an objectively reasonable suspicion that the driver of the car, Mr. Toney, had committed a traffic violation. In such a case, it is entirely valid under the Fourth Amendment for officers to stop the car. *See United States v. Pulliam*, 405 F.3d 782, 787 (9th Cir. 2005) ("The malfunctioning taillight provided lawful grounds for the stop, regardless of the officers' motivations.").

## II. The Seizure and Search of the Defendant Was Valid.

The seizure and search of the defendant was also lawful under the Fourth Amendment. It is well established that an officer may order a passenger who voluntarily gets out of a lawfully stopped vehicle back into the automobile without violating the passenger's Fourth Amendment rights. *See United States v. Williams*, 419 F.3d 1029, 1030 (9th Cir. 2005). Thus, contrary to the defendant's argument, "a passenger's compliance with an officer's command to get back into the car in which the passenger had just exited is not an unreasonable seizure under the Fourth Amendment." *Id.* at 1031.

The defendant attempts to change this case from one of a lawful traffic stop in which a passenger is told to remain inside a car, clearly controlled by *Williams*, into a case of independently stopping a person on the street. The defendant claims that "[b]efore the police could make the U-turn and stop Mr. Toney's car, . . . Mr. Toney pulled his car onto Reuel Court and stopped to let Mr. Lintz get out." Motion, at 2. According to the defendant, "[a]t that point, Mr. Lintz got out of the car and began to walk away from the car. When he was about 10 feet from Mr. Toney's car, the police pulled up behind the Mr. Toney's [sic] car and activated their emergency lights." Motion, at 2 (citations omitted). Even if those facts were accurate, however,

it does not change the legal analysis here.

As the *Williams* court explained, "'The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" 419 F.3d at 1031 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)). In upholding the officers' decision in that case to order a passenger to get back into the vehicle during a traffic stop, the *Williams* court emphasized "the officer's discretion to control the situation *as he or she deems necessary to ensure the safety* of the officer and the vehicle occupants." *Id.* at 1030. That reasoning controls the present case.

When stopping a car on the street and ordering a passenger to remain inside for officer safety reasons, it does not matter whether the passenger exited the car exactly when officers stopped the car or – as the defendant claims to be the case here – moments before, when the police were about to stop the car. In either situation, the officers must have the latitude to control the scene of the traffic stop in order to protect officer safety. For that reason, the *Williams* court acknowledged that "[g]iving officers the authority to control *all movement* in a traffic encounter is sensibily consistent with the public interest in protecting their safety." *Id.* at 1034 (emphasis added). Here, the minimal intrusion of asking the defendant to return to the automobile, even if he was some feet away from the car by that point, was far outweighed by the need to protect officer safety in a dynamic and inherently dangerous situation. *See id.* at 1032 (noting statistics set forth in *Maryland v. Wilson*, 519 U.S. 408, 410 (1997), documenting assaults and homicides on officers while enforcing traffic laws). *See also Brendlin v. California*, 127 S. Ct. 2400, 2407 (2007) ("It is also reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety.").

**III.    An Evidentiary Hearing Is Unwarranted.**

The defendant appears to assume that this Court's hearing of this motion on August 22, 2008 will be an evidentiary hearing with witnesses. It is undersigned counsel's understanding that this Court intended only to schedule oral argument on the motion for that date. In any event,

CR 08-0298 SI
GOVERNMENT OPPOSITION
TO MOTION TO SUPPRESS                5

the defendant has not established any need for an evidentiary hearing. "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Here, there are no contested issues of material fact. The attached affidavit of Officer Kirchner, which describes the search, appears to be entirely consistent with the defendant's account of the search, except for one non-material fact. The defendant appears to claim that he was already out of the car when the undercover car actually pulled in behind the Jeep. Even if that were true, it does not affect one iota the legal analysis or the officer safety concerns discussed above. In a traffic stop where there are three men inside a car and one man some feet outside it, officers need to have the latitude to control the situation regardless of the precise timing of when one of the men exited the car. Thus, any request by the defendant for an evidentiary hearing should be denied.

DATED: July 25, 2008

                                               Respectfully submitted,

                                               JOSEPH P. RUSSONIELLO
                                               United States Attorney

                                                         /s/          

                                               ERIKA R. FRICK
                                               Assistant United States Attorney

```
1  JOSEPH P. RUSSONIELLO (CASBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CASBN 163973)
3  Chief, Criminal Division

4  ERIKA R. FRICK (CASBN 208150)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102
        Telephone: (415) 436-6973
7       Facsimile: (415) 436-7234
        Email: erika.frick@usdoj.gov
8
9  Attorneys for Plaintiff

10                 UNITED STATES DISTRICT COURT
11                NORTHERN DISTRICT OF CALIFORNIA
12                    SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,      )   No. CR 08-0298 SI
15                                 )
         Plaintiff,                )   DECLARATION OF JASON F.
16                                 )   KIRCHNER IN SUPPORT OF
         v.                        )   GOVERNMENT'S OPPOSITION TO
17                                 )   DEFENDANT'S MOTION TO SUPPRESS
    JAMES LINTZ, a/k/a "Zuke,"     )
18                                 )
         Defendant.                )
19                                 )
```

20   I, JASON F. KIRCHNER, do hereby declare:

21  1. I am an Officer with the San Francisco Police Department ("SFPD") and have been so
22     employed since 2002. I have worked in uniform and plainclothes patrols. For the past
23     three years, I have been assigned to the Bayview Police District working mostly in
24     plainclothes capacity. I have made or participated in hundreds of arrests for the illegal
25     possession of firearms.
26  2. On March 24, 2008, at 15:52 hours, I was in plainclothes in an unmarked police vehicle
27     with three other officers. We were searching the area of Hudson and Ardath due to an
28     anonymous report of a black male in a vehicle waiting to kill a victim of a prior shooting.

DECLARATION
[CR 08-0298 SI]                          1

1. As we drove southbound on Hudson near Ardath Court, we were passed by a Jeep with a driver side brake light out. Although in my original police report, I had indicated that it was a tail light that was out, that was a typographical error. In fact, it was a brake light that was not functioning.

3. One of the other officers (Officer Coleman) spotted the traffic violation and followed the vehicle northbound on Hudson towards Reuel Court. Officer Coleman activated the undercover car's red light but did not turn on the siren. The Jeep, in which a male driver and three male passengers were riding, stopped almost immediately as it turned right onto Reuel Court. Officer Coleman pulled the undercover car in behind the stopped Jeep.

4. As our undercover car stopped, I exited the car from the front right passenger seat, where I had been sitting. As I approached the Jeep, the occupant of the rear passenger side seat, later identified as James Lintz, exited the vehicle and began to walk away. Lintz was carrying a heavy camouflage coat in his left hand and wearing bulky, loose clothing capable of concealing a firearm. I was suspicious of Lintz's hasty exit from the vehicle and suspected he had something illegal on his person. Lintz took several steps but got no more than 20 feet away from the car. I was very concerned about officer safety with three men inside the vehicle and one man outside of it.

5. I called out to Lintz and told him to stop and to get back into the car. Lintz hesitated, looked at me, then walked back to the vehicle quickly. I allowed him to get back into the vehicle without searching him because I thought it was safer that way. Lintz entered through the open rear passenger side door, which remained open throughout the incident.

6. As soon as he sat down in the Jeep, Lintz appeared to be nervous and immediately reached for his left waistband area with one or both hands. My first thought was that he was reaching for a gun.

7. I ordered Lintz to "Keep your hands where we can see them!" He complied only briefly, then reached for his left waistband area again. He did this three or four times.

8. Each time he reached for his waist again, I became more concerned for our safety and yelled louder at Lintz to put his "Hands up! Now!"

DECLARATION
[CR 08-0298 SI]                                2

9. During this time, I noticed Officer Scott standing next to me and also yelling at Lintz to show us his hands. At some point, fearing for our safety, we drew our guns.

10. By the fourth time Lintz reached for his waist, I realized it was too dangerous to leave him in the car and he had to be removed and searched.

11. I ordered Lintz "Out of the car with your hands up!" Once he was out of the car, I saw the receiver of a shotgun in Lintz's waistband. Officer Scott removed the shotgun as I controlled Lintz's hands. Once the shotgun was removed, I handcuffed Lintz.

12. The shotgun was shorter than the legal length. The serial number of the gun had also been scratched off.

13. At that point, we removed and detained the driver of the vehicle, Charles Toney, and two other passengers in order to ensure officer safety. A search of the vehicle for additional contraband was then conducted with negative results. I inspected the gun and found two live 12 gauge shells in the magazine of the shotgun. All suspects, evidence, and the vehicle were transported to Bayview Station for further investigation.

14. At the station, Officers Scott and Ellis Mirandized and interviewed Lintz. During the videotaped interview, Lintz admitted to possessing the firearm in the vehicle, concealing it on his person, knowing that it was loaded, and knowing that the gun had been cut down. He said he found it near Ardath Court and brought it in the car with him when he got a ride from his friend.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of July 2008, at San Francisco, California.

OFF. *[signature]*

OFFICER JASON F. KIRCHNER

DECLARATION
[CR 08-0298 SI]                                    3