1    BARRY J. PORTMAN
Federal Public Defender
2    GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
3    19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
4    San Francisco, CA 94102
Telephone:  (415) 436-7700
5
Counsel for Defendant LINTZ
6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          )    No. CR-08 - 298 SI
                                        )
12                        Plaintiff,    )    **DEFENDANT'S REPLY TO**
                                        )    **GOVERNMENT'S OPPOSITION TO**
13   vs.                                )    **MOTION TO SUPPRESS EVIDENCE**
                                        )
14   JAMES LINTZ,                       )
                                        )
15                        Defendant.    )
     _____)

16

17          The Government has filed an opposition to the defendant's motion to suppress evidence,

18   and has indicated in that opposition that it does not believe that an evidentiary hearing is

19   necessary to resolve this motion.  The defendant disagrees, and believes that an evidentiary

20   hearing is necessary for a number of reasons as is set forth below.

21                                      **FACTS**

22          In his original motion, the defendant indicated that there were no facts which justified the

23   stop of the vehicle in which Mr. Lintz had been a passenger on the afternoon of March 24, 2008.

24   In its opposition, the Government argues that the stop was justified by the fact that police officers

25   saw that a brake light was not functioning on the car at issue, and that as a consequence the stop

26   was a valid traffic stop.  Gov. Opp'n. at 2.  This claim is invalid for a number of reasons.

1      First, the declaration of Officer Kirchner, attached to the Government's opposition, is not

2  a declaration from the individual with personal information about the facts at issue. Officer

3  Kirchner states that "we were passed by a Jeep with a driver side brake light out." Kirchner

4  Decl. at 2. He goes on to say that "one of the *other* officers (Officer Coleman) spotted the traffic

5  violation and followed the vehicle northbound on Hudson towards Reuel court." *Id.* (emphasis

6  added). It is therefore clear that it was Officer Coleman, and *not* Officer Kirchner, who

7  supposedly saw the alleged traffic violation, and it is not sufficient for the Government to claim

8  that there was a valid basis for the stop based upon the declaration of a person without personal

9  knowledge of that violation. *See* N.D. Cal. Crim. L.R. 47-5 (incorporating Civ. L.R. 7-5, Fed.

10  R. Civil P. 56(e)).

11      Second, the Government fully admits that the police report originally filed by Officer

12  Kirchner refutes the assertion now made by him in his declaration that the police stopped the

13  vehicle because of a burned out *brake* light. As Officer Kirchner admits, his police report states

14  that the stop was based on the fact that the Jeep at issue had "a driver side tail light out."

15  Kirchner Report at 6. Apparently realizing that such an assertion would be hard to support at a

16  hearing insofar as the stop occurred at 4:00 in the afternoon when the Jeep's lights would not be

17  on, Officer Kirchner now asserts that the statement in his report about the tail light was a

18  "typographical error" and that he meant to say brake light.

19      Not only is the difference between a tail light and brake light a substantive and not

20  typographical error, but Officer Kirchner's declaration is refuted by the video of the interrogation

21  of Mr. Lintz after his arrest. During the course of this completely illegal interrogation,[1] one of

22

23      [1] The interrogation was illegal because Mr. Lintz never waived his right to remain silent
before he was interrogated by the police officers who arrested him. The only reason why the
24  defendant has not moved to suppress these statements is because he realizes that illegally
obtained statements may be used at a suppression hearing, and further understands that should
25  this Court find that Mr. Lintz's arrest and search were illegal his statements automatically will be
suppressed. If for whatever reason this case were to go to trial to preserve a denial of this
26  motion, Mr. Lintz respectfully asks for permission to brief this issue.

1  the officers[2] conducting the interrogation tells Mr. Lintz that he will be writing a report which

2  "tells a story" about what happened, and then recites the facts leading up to the stop of the car;

3  *i.e.* that they [the police] saw a "car load of guys", "the *tail light* was *broken*," and they then did a

4  traffic stop.  (Emphasis added).  Apparently, the official version of the reason for the stop has

5  three variations; a tail light was broken, a tail light was merely burned out, and now it is a brake

6  light which was not functioning on the vehicle.

7        In addition to these contradictory claims, the discovery provided to the defendant shows

8  that the driver of the vehicle, Charles Toney, was never cited for the alleged vehicle violation

9  relied upon by Officer Kirchner to justify the stop.  Specifically, there is a space on the police

10 report reserved for noting any citations issued the vehicle driver.  None is marked in Officer

11 Kirchner's report.  *See* Kirchner Report at 2 (attached to defendant's original motion).  In

12 addition, on page five of that report, there is a section in which the reporting officer is supposed

13 to describe the vehicle at issue and report any damage or other "information" about the vehicle.

14 Again, nowhere in this section is there any mention of a broken tail light, a burned out tail light,

15 or a burned out brake light.  Finally, an investigator from undersigned counsel's office has

16 contacted the Department of Motor Vehicles, and was told that Mr. Toney has no record of being

17 given a ticket on March 24, 2008.  *See* declaration of Robert Ultan (attached).[3]  Thus, there is no

18 independent verification of the basis for the stop (*i.e.,* a ticket or even a notation in the police

19 report) where such verification would be expected.

20       The fact that the Government has submitted a declaration of an individual without

21 personal knowledge of the facts at issue merits the granting of the defendant's motion to suppress

22 on the ground that the initial stop of the vehicle was unfounded.  At the least, the inconsistencies

23

24       [2] The video does not identify the officer who made the statement; the defendant presumes
25 the officer is Officer Kirchner.

26       [3] Mr. Ultan has asked for a copy of the record to be sent to our office; it has not yet
arrived.

DEFENDANT'S REPLY                    3

1   in the record relating to the alleged basis for the stop merits an evidentiary hearing where the

2   officers involved in this stop will be subjected to cross examination about the claims which the

3   Government uses to justify the vehicle stop.

4          As for the facts relating to Mr. Lintz's actual detention, there are disputes about whether

5   the police car was behind the Jeep when Mr. Lintz got out of the car; Mr. Lintz claims that the

6   police car was not behind the Jeep when he got out and walked away, and the Government claims

7   it was.  This fact is important, because there are issues here about whether Mr. Lintz got out of

8   the car after it had been pulled over, or whether he got out of a car which had stopped for reasons

9   independent of the police, and was simply walking down the street towards a friend's house

10  when he was ordered to return to the car.   Again, an evidentiary hearing is required so that this

11  Court can determine exactly what happened here and the sequence of events.

12         There is one final factual matter which Mr. Lintz believes should be explored further.

13  Time and again in cases very similar to this, undersigned counsel has seen claims by police that

14  at the time of the defendant's arrest the police were looking for a person who generally fit the

15  description of the defendant for some serious crime based upon the tip of an "anonymous

16  informant."  When called upon to provide further information about the alleged tip, the police

17  cannot provide any further particulars.  Nonetheless, this alleged tip somehow works its way into

18  the reasonable suspicion analysis, or is otherwise considered by a reviewing court when

19  determining the merits of a defendant's motion.

20         In this case, despite Officer Kirchner's claim that the police were looking for a person

21  who was allegedly out to "kill a victim of a prior shooting,"[4] the police never asked Mr. Lintz

22  once during his lengthy interrogation about any prior shooting, his relationship to anyone who

23  might have been the supposed target, nor do they once mention that they were on alert to find

24  someone who might be out to kill someone else.  Moreover, if one takes the declaration of

25  _____

26         [4] One presumes the "victim of a prior shooting" was not already deceased; otherwise, the
    police presumptively would had been searching Colma and not Hunter's Point.

1   Officer Kirchner at face value, every black man in a car in the Bayview/Hunters Point area would

2   have been a potential suspect.

3       The defendant realizes that the reason why the police were on patrol is irrelevant, and that

4   the Government does not use Officer Kirchner's statement to justify the seizure of Mr. Lintz.

5   Nonetheless, should any further mention be made of this "tip," the defendant will demand

6   complete discovery relating to it – that is, any recordings and or notes made of this alleged

7   anonymous tip, and specifically the person or entity to whom this tip was made, the time and date

8   of the tip, and any information relating to the source of the tip.

9                                    **ARGUMENT**

10      **I. The Seizure of Mr. Lintz and the Search of His Person Was Illegal**

11      There appears to be no dispute that Mr. Lintz was detained by police after he had exited

12   the Jeep at issue, and was approximately 20 feet from the car when he was ordered back into the

13   vehicle.[5]  The question is whether the act of ordering him back into the car without any cause was

14   proper.

15      As a starting point, this Court is probably aware from reading the Ninth Circuit's decision

16   in *United States v. Williams,* 419 F.3d 1029 (9th Cir. 2005), that there is a very real split among

17   courts as to whether police may order a individual who has exited a car after a police stop to

18   return to the car.  Several federal circuit courts have held, as did the *Williams* court, that under

19   the logic of the Supreme Court's decision in *Maryland v. Wilson,* 519 U.S. 408 (1997), police

20   may order a person leaving a vehicle stopped by police to either stay in the car or return to it in

21   order to insure officer safety.  *See Williams*, 419 F.3d at 1034; *Rogala v. District of Columbia,*

22   161 F.3d 44 (D.C. Cir. 1998); *United States v. Moorefield,* 111 F.3d 10 (3d Cir. 1997).   In

23   contrast, a number of state courts have held that police may not order a passenger to return to a

24   car after a police stop unless there is independent cause for the detention.  *See People v. Dixon*,

25   _____

26       [5] The defendant accepts the assertion of Officer Kirchner that Mr. Lintz was in fact 20
     feet away from the car when he was ordered back.

1    21 P.3d 440 (Colo. Ct. App. 2000); *Dennis v. State*, 345 Md. 649 (1997); *Wilson v. State*, 734

2    So.2d 1107 (Fla. Ct. App. 1999); *Walls v. State*, 714 N.E.2d 1266 (Ind. Ct. App. 1999).

3         Hopefully, the Supreme Court will someday resolve the split between the various courts

4    in this country about whether police may detain a passenger leaving a vehicle after a valid police

5    stop.  Until it does, Mr. Lintz appreciates the fact that in this Circuit, they may do so.

6         That fact does not resolve this case, however, because this case presents issues not

7    addressed by *Williams.*  The *Williams* case involved a situation where the police undisputably

8    conducted a valid vehicle stop, and only after the vehicle was validly stopped did the passenger

9    get out of the car.  *Williams,* 419 F.3d at 1031.  The passenger was "immediately ordered" to get

10   back into the car, a fact which was crucial to the *Williams* court's decision to uphold the police

11   action.  As the Ninth Circuit reasoned,

12        When Williams attempted to exit the vehicle, *the automobile had already been lawfully*
         *stopped with him inside.* The officer's order to get back into the automobile merely
13        maintained the status quo by returning the passenger to his original position as an
         occupant inside the car. . . . At most, such an order to re-enter a car that the passenger
14        voluntarily entered, *and just exited*, cannot be characterized by [sic] anything but a "mere
         inconvenience. . .".
15
     *Williams,* 419 F.3d 1033 (emphasis added).
16
          The issue not decided in *Williams* is whether police may order a person back into a car
17
     which was stopped by the driver for reasons *unrelated to police commands*, and where the
18
     passenger is out of the car and some distance away when s/he receives the police order to return
19
     to the car.  In other words, may the police pull up behind a stopped car, claim that they *could*
20
     have stopped the car for some vehicle violation, and then detain anyone who was a passenger in
21
     the car regardless how far away that passenger was from the vehicle?
22
          Mr. Lintz contends that the answer to this question is no, and that to rule otherwise would
23
     be an improper extension of *Maryland v. Wilson.*  As noted above, many courts have refused to
24
     extend *Wilson* to any situation where a passenger happens to be in a car which is stopped for a
25
     traffic violation and wants to get out; but those courts which have extended *Wilson* to those
26

1   individuals who try to get out of a car talk about preserving the status quo in order to ensure

2   officer safety.[6]   But how far does the issue of officer safety extend?  Suppose, for example, a

3   police officer comes upon a group of individuals standing together on the street, and one of the

4   individuals does something which gives the officer a founded suspicion to pat search him.  Does

5   this mean that everyone standing in the group can be detained as well because one of them might

6   walk away and later shoot the officer in the back?  The answer is clearly no; the Supreme Court

7   has held that when a person is approached on the street, "[t]hat person need not answer any

8   question put to him; indeed, he may decline to listen to the questions at all *and may go on his*

9   *way. . . .* He may not be detained even momentarily without reasonable, objective grounds for

10  doing so; and his refusal to listen or answer does not, without more, furnish those grounds."

11  *Florida v. Royer*, 460 U.S. 491, 498 (1983)(emphasis added).  *See also Sibron v. New York*, 392

12  U.S. 40 (1968)(individual in group may not be searched absent founded suspicion that the

13  individual was armed); *Ybarra v. Illinois*, 444 U.S. 85, 90-94 (1979)(police enter bar to search

14  for drugs; police cannot search everyone in bar without individualized founded suspicion).  And

15  to extend this issue further, suppose there was this same group of individuals, and one of them

16  walked away before the police arrived; would the police have the right to detain that individual

17  on the grounds of officer safety as he walked down the street merely because he was formerly

18  associated with someone who the police determined to subject to a pat search?  Again, the

19  answer is clearly no in light of the above authority.  *See also United States v. Causey*, 818 F.2d

20  354, 360 (5th Cir. 1987)(court equates right to be free from warrantless searches with the "right

21  to walk away from interrogating officers.").  Yet that is what the Government is arguing here;

22  simply because Mr. Lintz had been in a car which could have been (but apparently was not)

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
        [6] The logic of these cases remains unclear to Mr. Lintz, insofar as *Wilson* discussed the
    increased accessability of guns to people in a car – "[o]utside of the car, the passengers will be

25  denied access to any possible weapon that might be concealed in the interior of the passenger
    compartment." *Wilson,* 519 U.S. at 414.  If a person wants to get out of a car and run away, it

26  seems fairly clear that such a individual would pose a lesser, and not greater, threat to officer
    safety.

DEFENDANT'S REPLY                    7

1   ticketed for a minor vehicle violation, he was subject to being detained even though he left the

2   vehicle and was some 20 feet away when the police pulled up behind the car.  To stop a

3   passenger in such a situation is not preserving the status quo, *i.e.,* the police are not keeping

4   everyone in a car in the same position they were in when the police stopped the car; rather, they

5   are detaining a person who has decided to go about his business and putting him into a position

6   different than the one which existed when the police pulled up behind the vehicle.  Indeed, one

7   can envision taking the Government's argument to its fullest extension; suppose the police see a

8   car make an illegal u-turn into a driveway from blocks away, and see a passenger get out of the

9   car and walk into a house.  Under the Government's reading of *Williams,* the police can pull up

10  behind the car, even if it is minutes later (or even more) and go into the house to order the

11  passenger to get back into the car because at the time the police concluded that the vehicle was

12  subject to citation, the person was a passenger in the car.

13          Respecting the reasoning of *Wilson,* and with the understanding that this Court must

14  follow *Williams*, Mr. Lintz suggests that this Court rule that *Williams* applies only when police

15  make a valid traffic stop and a passenger *who is in the vehicle at the time of the stop* attempts to

16  get out of the car.  Those were the facts of *Williams*, and any further extension of *Williams* would

17  be unwarranted and unfortunate as a matter of constitutional law.  Where, on the other hand, a

18  car stops and a passenger gets out to go about his or her business, police may not subsequently

19  detain that individual and order him or her to return to the car merely because at some time prior

20  he was a passenger in the car.  This application of *Williams* avoids the nightmare of having courts

21  determine the validity of a detention based upon the proximity of a former passenger to a car

22  stopped for a traffic violation.

23          In this case,  Mr. Lintz accepts Officer Kirchner's statement that he was some 20 feet

24  away from the car when the police ordered him to return to the car.  There is no way he could

25  have gone 20 feet if, as is suggested in the Government's papers, he was in the car when the

26  police pulled up.  This is especially true if one accepts Officer Kirchner's declaration that he

1  (Officer Kirchner) was already out of the police car and behind the Jeep when Mr. Lintz started

2  to get out, and that Mr. Lintz immediately complied with Officer Kirchner's command to halt

3  and get back into the car.

4      Mr. Lintz believes that his motion should be granted on the basis of what has been

5  submitted to this Court.  If this Court cannot grant his motion on the papers before it, he asks for

6  an evidentiary hearing so that he can cross examine the officers and show exactly what happened

7  in this case so that the Court can adequately rule on the merits of this motion.

8

9  Dated: August 8, 2008

10                          Respectfully submitted,

11                          BARRY J. PORTMAN
                            Federal Public Defender
12
                                  /s/
13
                            GEOFFREY A. HANSEN
14                          Chief Assistant Federal Public Defender

15

16

17

18

19

20

21

22

23

24

25

26

Attachment A

1  BARRY J. PORTMAN
   Federal Public Defender
2  GEOFFREY A. HANSEN
   Chief Assistant Federal Public Defender
3  19th Floor Federal Building – Box 36106
   450 Golden Gate Avenue
4  San Francisco, CA  94102
   Telephone:  (415) 436-7700
5
   Counsel for Defendant LINTZ
6

7

8
                IN THE UNITED STATES DISTRICT COURT
9
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,              )
                                           )    No. CR 08-0298-SI
12                        Plaintiff,       )
                                           )    **DECLARATION OF**
13  v.                                     )    **ROBERT ULTAN IN SUPPORT OF**
                                           )    **DEFENDANT'S REPLY**
14  JAMES LINTZ,                           )
                                           )
15                        Defendant.       )
    _____   )
16

17      I, Robert Ultan, declare and state:

18      1.      Since 1992, I have been employed as an investigator for the Federal Public Defender's

19  Office in San Francisco, California.

20      2.      As part of my job, I regularly contact the California Department of Motor Vehicles

21  ("DMV") and get information about and the records of individuals involved in the cases I am

    assigned to work on.
22
        3.      Among the categories of records maintained by DMV is a history of the citations for
23
    California Vehicle Code violations issued to a particular driver.
24
        4.      On August 5, 2008, I contacted DMV via phone and got information about the driver
25
    records of Charles Earl Toney (DOB: 10-26-85; CDL: D2236640.)
26

DECLARATION OF ROBERT ULTAN          - 1 -
IN SUPPORT OF DEFENDANT'S REPLY

1      5.    The representative of DMV told me that there are no citations on the driver record of

2  Charles Earl Toney.

3      I declare under penalty of perjury that the foregoing is true and correct to the best of my

4  knowledge and belief.

5

6      Executed this _8TH_ day of August, 2008, at San Francisco, California.

7

8                                        _____

9                                              ROBERT ULTAN

                                  Federal Public Defender Investigator

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF ROBERT ULTAN        - 2 -
IN SUPPORT OF DEFENDANT'S REPLY